Richard D. Burbidge (#0492)
rburbidge@burbidgemitchell.com
Beau R. Burbidge (#17046)
beau@burbidgemitchell.com
Carolyn LeDuc (#14240)
cleduc@burbidgemitchell.com
BURBIDGE | MITCHELL
215 South State Street, Suite 920
Salt Lake City, Utah 84111
Telephone: 801-355-6677
Facsimile: 801-355-2341
*Attorneys for Plaintiff*

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| FINN FASTRE and JASON FASTRE, individually and as personal representatives of THE ESTATE OF HANS FASTRE, <br><br> Plaintiffs, <br><br> vs. <br><br> WEBER COUNTY, a Utah governmental entity; ASHTON OLSEN, an individual; BRAYDON APPLE, an individual; DANIELLE ROCHELL, an individual; KYLIE KOHLER, an individual; FAITH VITAL, an individual; ASHLEY WILSON, an individual; ASHLYN MCGLONE, an individual; MADYSON FOREMAN, an individual; CHARLES SICHZ, an individual; BODEE BOWCUT, an individual; CODY WILLIAMSON, an individual; CAYDEN CHARLEY, an individual; AVERY WELLS, an individual; BEAU BROWN, an individual; MATHEW LECAVALIER, an individual; MICHAEL CLEGG, an individual; BONNIE VITAL, an individual; EMMA NEIDERHOUSER, an individual; and DOES 1-20; <br><br> Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> **Tier 3** <br><br> Case No. _____ <br><br> Judge _____ |

1

Plaintiff, for cause of action against defendants, hereby alleges as follows:

**PARTIES**

1.      Hans Fastre ("Hans") is a deceased person. He died on August 29, 2025, at the age of 57 while in custody at Weber County Jail.

2.      Finn Fastre ("Finn") and Jason Fastre ("Jason") are the natural children of Hans. At all relevant times hereto has been, both individuals reside in Utah.

3.      Jason and Finn Fastre are the personal representatives of the Estate of Hans Fastre (the "Estate"). The Estate is the one of the plaintiffs in this matter, by and through Jason and Finn. They assert these claims pursuant to Utah Code Ann. § 78B-3-106 (allowing suits for wrongful death by heirs or personal representative(s)) and § 78B-3-107 (survival of actions).

4.      Defendant Weber County is a county in the State of Utah organized and existing pursuant to Utah law. At all relevant times herein, Weber County was the owner, operator, and/or administrator of the Weber County Jail ("Jail").

5.      Defendants Ashton Olsen ("Olsen") and Braydon Apple ("Apple") are employees of Weber County and are collectively referred to herein as "Arresting Officers." They are being sued in their official and personal capacities. Upon information and belief, they are both domiciled in Weber County, Utah.

6.      Defendants Danielle Rochell, Kylie Kohler, Faith Vital, Ashley Wilson, Ashlyn McGlone, Madyson Foreman, Charles Sichz, Bodee Bowcut, Cody Williamson, Cayden Charley, Avery Wells, Beau Brown, Mathew Lecavalier, Michael Clegg, Bonnie Vital, and Emma Neiderhouser are employees of Weber County and are collectively referred to herein as "Weber County Jail and Medical Staff." They are being sued in their official and personal capacities. Upon information and belief, they are all domiciled in Weber County, Utah.

7. Weber County, Arresting Officers, and Weber County Jail and Medical Staff are collectively referred to herein as "Defendants."

8. DOES 1-20 are persons or entities who may share in the liability for Hans's death, but whose names and identities have not yet been ascertained by plaintiff. Plaintiff prays the Court for leave to amend this complaint when the true names and identities of any such defendants are ascertained through discovery.

## JURISDICTION AND VENUE

9. This court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because plaintiff's claims raise a federal civil rights question pursuant to 42 U.S.C. § 1983.

10. Venue is proper in this court under 28 U.S.C. § 1391 because all defendants reside in Utah, and plaintiff's claims herein arise from acts occurring in Weber County, State of Utah.

11. Under 42 U.S.C. § 1988(b), the Court has the authority to award reasonable costs and attorney fees to the prevailing party for claims brought under 42 U.S.C. § 1983.

## GENERAL ALLEGATIONS

**Arrest and Booking on August 28, 2025**

12. Prior to his death, Hans suffered from chronic alcoholism and had struggled with alcohol addiction.

13. On August 28, 2025, Deputy Ashton Olson initiated a traffic stop on a dark colored sedan driven by Hans.

14. Deputy Olsen immediately noted that Hans's eyes were glossy and watery, his speech was slow, and he could not provide his own address.

15. Deputy Olsen then performed a records query for Hans's driver's license and learned that it had been revoked due to a prior DUI arrest in Colorado.

16.     Deputy Olsen therefore performed various Standardized Field Sobriety Tests in which Hans performed poorly. He noted that Hans was unsteady on his feet and smelled strongly of alcohol. An inventory search of Hans's vehicle performed by Deputy Olsen also revealed two cups containing alcohol.

17.     Deputy Olsen administered a breathalyzer, which recorded Hans's Blood Alcohol Level at .325, indicating severe alcohol poisoning and a need for immediate professional medical attention.

18.     Deputy Braydon Apple was asked to assist with the traffic stop and observed Hans "shaking and sweating profusely." (Narrative Report.)

19.     Deputy Apple attempted to ask Hans questions, but "he seemed very nervous and could not formulate any answer completely." (Narrative Report.)

20.     Deputy Apple could smell the odor of a consumed alcoholic beverage emanating from the car. (Narrative Report.)

21.     Deputy Apple also noted Hans's .325 blood alcohol level.

22.     Despite having a dangerously high blood alcohol level, requiring immediate professional medical attention, neither Olsen nor Apple took Hans to an emergency room or medical treatment facility. Instead, they transported him directly to the Jail's booking area.

23.     At the time of his booking, Jail and Medical Staff noted Hans's dangerously high blood alcohol level.

24.     Hans was booked into the Jail by Deputy M. Turnbow, was searched by Deputy Beau Brown, and was released by Deputy T. Barker. Based on Hans's physical condition and smell, these deputies knew or should have known that Hans was dangerously intoxicated and in need of immediate medical attention for him.

4

25.    Rather than have Hans transported to a hospital for medical treatment or providing emergent treatment at the Jail, the Medical Staff at the Jail merely prescribed Hans chlordiazepoxide ("Librium"), a drug known to assist with the prevention of alcohol withdrawal symptoms, showing that Jail staff were aware of Hans's immediate and serious medical need.

26.    Jail Staff housed Hans in Medical Cell 6 because of his high blood alcohol content. Hans shared the cell with Alonzo Hopkin ("Hopkin").

27.    Staff recorded Hans as calm, cooperative, and intoxicated during his placement into Medical Cell 6.

28.    Hans subsequently developed alcohol withdrawal symptoms at the Jail.

29.    Upon information and belief, after his booking, Hans did not receive proper administration of the prescribed Librium; and/or his condition was not monitored, or inadequately monitored, by Jail Staff.

**Hans Exhibits Obvious Symptoms of Alcohol Withdrawal on August 29, 2025**

30.    Throughout Hans's detention, he was monitored by camera and should have been visible to Jail Staff.

31.    According to Hans's cellmate Hopkin, at or around 12:00 p.m. on August 29, 2025, Hans was talking, moving around and acting normally. Hopkin had a conversation with Hans regarding Hans's concern about the care of his dog now that he was in jail.

32.    At approximately 5:45 p.m., Hans fell asleep.

33.    Around 7:45 p.m., Hopkin heard Hans take a deep breath, then saw him clench his fists to his chest and begin shaking.

34.    Hopkin immediately got up, pushed the intercom button, and pounded on the Lexan glass door to get the attention of Jail Staff.

35.    Receiving no response, Hopkin continued to push the intercom button multiple times.

36.    At 7:47, Hopkin was frustrated with the lack of response, and returned to his bed, placing his blanket over his body with his back to Hans.

37.    At 7:51, Hopkin got up off his bed, pressed the intercom for help again, and continued to look over at Hans.

38.    Again receiving no assistance, Hopkin stepped away from the intercom, sat on his bed, and pulled the blankets over himself again while laying on his right side.

39.    At 7:55, Hopkin got up off his bed and tried to use the intercom another time. He then began to slap the inside door/window panel to get attention from any Jail Staff. He continued to look through the window for any staff member that could assist.

40.    It was only after these repeated attempts to call for help, occurring over the span of ten minutes, that Hopkin was able to get the attention of Corrections Assistant Danielle Rochell ("Rochell").

41.    Upon information and belief, Rochell was or should have been available to respond to Hopkin's calls for help, but through willful neglect or negligence chose to ignore Hopkin's calls.

**The Jail's Delayed Response and Lifesaving Efforts**

42.    At 7:56 p.m., Rochell approached Medical Cell 6 and noticed Hans's face was a blueish-purple color, his hands and feet were pale, and he showed no signs of breathing or consciousness. Rochell then called out for medical aid and assistance and sought assistance from two nurses in the area, Ashley Wilson and Emma Neiderhouser.

6

43. Upon information and belief, Nurses Wilson and Neiderhouser were or should have been available to provide care for Hans, but through willful neglect or negligence did not respond to calls for help from Hopkin.

44. It was not until 7:57 p.m. that nurses Wilson and Neiderhouser, along with a Weber County Jail Corrections Officer, Deputy Charles Sichz ("Sichz"), arrived at the cell.

45. At the time that Deputy Sichz arrived at Hans's cell, nurses had not taken Hans's pulse, nor applied any life saving measures. Rather, Deputy Sichz is noted as hearing Nurse Wilson state that Hans had "a death rattle" indicating a presumption that Hans was deceased when he was not. (*See* Sichz Narrative Report, pp. 8-9.) Only after Deputy Sichz began performing a sternum rub did the Jail Nurses begin providing life saving intervention measures.

46. At 7:58 p.m., more than seven Weber County Jail Corrections Officers arrived at the cell, including Deputies Bodee Bowcut, Cody Williamson, Matthew LeCavalier, Beau Brown, and Michael Clegg, and Sergeants James Briel and James Clark

47. The Jail Staff and nurses claim to have tried to perform lifesaving efforts, including a sternum rub, CPR Chest Compressions, administering Narcan, and using an Automated External Defibrillator (AED).

48. Ogden City Fire Personnel took over lifesaving efforts at 8:08 p.m. and administered an additional round of AED on Hans three times from 8:08 p.m. to 8:18 p.m.

49. At 8:20 Hans was removed from the cement floor and placed onto a gurney.

50. At 8:21 Hans was rolled away to begin transport to McKay-Dee Hospital.

51. At McKay-Dee Hospital, Hans was placed under the care of Dr. Joel Taylor, who continued lifesaving efforts until 8:45 p.m., where Hans was subsequently declared deceased due to cardiac arrest and shock, known complications of alcohol poisoning and withdrawal.

**First Cause of Action**
**42 U.S.C. § 1983 (*Monell*—policy and custom)**
**(Against Weber County)**

52.    Plaintiffs incorporate all the preceding allegations.

53.    Weber County (specifically, Weber County Jail) had an official policy and an informal custom amounting to a widespread practice that had a direct causal link to Hans's death and that was enacted and maintained with deliberate indifference to an almost inevitable violation of the Fourteenth Amendment.

54.    Specifically, and without limitation, these policies and customs included improperly booking inmates who should have received medical care for serious medical needs, failure to care for and monitor inmates who have serious medical needs, failure to timely administer medications, and/or failure to properly care for inmates suffering alcohol withdrawal.

55.    Policy-making officials of Weber County knew of these policies and customs, but acted with deliberate indifference towards previous constitutional violations by consciously and deliberately choosing to disregard the risk of harm that these policies and customs created.

56.    These policies and customs were the moving force behind the unconstitutional acts against Hans.

57.    These policies and customs were continuing, widespread, and systematic.

58.    On information and belief, similarly situated inmates were mistreated in a manner similar to the way Hans was mistreated.

59.    Pursuant to these policies and customs, Hans was not taken to the hospital by Officers Olsen or Apple, despite his significant blood alcohol condition.

60.    Pursuant to these policies and customs, Hans did not receive proper medication or other interventions to address his immediate and critical need.

61.     Pursuant to these policies and customs, Hans was not properly monitored for his serious medical need.

62.     Pursuant to these policies and customs, Hans's serious medical condition was ignored until it was too late. Weber County's actions and inactions therefore proximately caused Hans's death.

**Second Cause of Action**
**42 U.S.C. § 1983 (*Monell—failure to train and supervise*)**
**(Against Weber County)**

63.     Plaintiffs incorporate all the preceding allegations.

64.     Policy-making officials of Weber County were deliberately indifferent to the need to properly train and supervise employees at Weber County Jail.

65.     Weber County had actual and constructive notice that its failure to properly train and supervise was substantially certain to result in a constitutional violation of prisoners' right to medical care.

66.     Weber County consciously and deliberately chose to disregard this risk of harm.

67.     Past violations of this right constituted a pattern of tortious conduct that made another constitutional violation, like that against Hans, highly predictable and plainly obvious.

68.     Weber County failed to train and supervise its employees to handle situations where an inmate, like Hans, had a serious medical need and needed to be monitored and treated appropriately. This failure created an obvious potential for constitutional violations. The training of Weber County's employees was not adequate to prevent violations of detainees' constitutional rights.

69.     This failure to train and supervise was a deliberate and conscious choice by Weber County.

9

70.     On information and belief, previous inmates at Weber County Jail have died and suffered severe injuries from not receiving the proper monitoring or necessary medical treatment.

71.     Weber County's failure to properly train and supervise its employees was the proximate cause of Hans's death.

**Third Cause of Action**
**Individual Liability brought under 42 U.S.C. § 1983**
**(Against Arresting Officers)**

72.     Plaintiff reincorporates all the preceding allegations.

73.     Pursuant to the Fourteenth Amendment of the United States Constitution, a government employee can be held individually liable where he or she demonstrates indifference to the serious medical needs of a pretrial detainee.

74.     Hans was a pretrial detainee at the time of his arrest and was thus entitled to constitutional protection against deliberate indifference to his serious medical needs, including those arising in relation to alcohol consumption.

75.     Such protections included the right to receive the proper medical treatment and be taken to a hospital if experiencing a serious medical related to alcohol toxicity.

76.     At Hans's arrest, his blood alcohol content was dangerously high and he exhibited signs of a serious medical need, including sweating and shaking profusely and not formulating complete answers to questions, such that even a layperson would recognize the necessity for immediate medical attention.

77.     Arresting Officers Olsen and Apple knew or should have known that Hans was suffering from a sufficiently serious medical condition, and that he needed to be brought to a hospital for appropriate management, but neither of them took any steps to bring Hans to a hospital.

10

78. Arresting Officers Olsen and Apple knew of the excessive risk this medical condition posed to Hans's health and safety, yet they disregarded this risk.

79. Arresting Officers Olsen and Apple took upon themselves the responsibility to make life or death medical decisions for Hans, willfully disregarding Hans's need to be at a hospital for management of his serious medical condition.

80. Despite having access to medical providers better qualified to make appropriate medical decisions to manage Hans's condition, Arresting Officers Olsen and Apple exercised a willful and deliberate indifference to Hans's serious medical needs by failing to contact such providers at the time when Hans was gravely ill.

81. In doing the acts alleged in this Compliant, Arresting Officers Olsen and Apple were acting under the color of law and under the authority of their respective offices as deputy sheriffs of the Weber County Jail.

82. The conduct of the Arresting Officers Olsen and Apple as alleged herein was flagrant, wrongful, and illegal, and was committed in willful violation of Hans's constitutional civil rights.

83. The conduct of the Arresting Officers as alleged herein cannot be immunized under state law because the conduct violated a clearly established right of which a reasonable person would have known.

84. As a result of having his civil rights violated, Hans was made to suffer cruel and unusual punishment at the hand of the named defendants, ultimately resulting in the loss of his life, all to his great detriment and harm, and to the great detriment and harm of his parents and family.

**Fourth Cause of Action**
**Individual Liability brought under 42 U.S.C. § 1983**
**(Against Weber County Jail and Medical Staff)**

85.  Plaintiff reincorporates all the preceding allegations.

86.  Pursuant to the Fourteenth Amendment of the United States Constitution, a government employee can be held individually liable where he or she demonstrates indifference to the serious medical needs of a pretrial detainee.

87.  Hans was a pretrial detainee at the Jail and was thus entitled to constitutional protection against deliberate indifference to his serious medical needs, including needs related to alcohol withdrawal.

88.  Such protections included the right to be monitored for deteriorating conditions and the right to receive prompt medical intervention from if Hans exhibits signs of alcohol withdrawal.

89.  In Hans's time at the Jail, he had serious medical needs, including a dangerously high blood alcohol level and alcohol withdrawal symptoms, such that even a layperson would recognize the necessity for immediate medical attention.

90.  Jail employees had actual and/or constructive knowledge of Hans's medical condition, prescriptions, symptoms, and need for medical attention, via security cameras that continuously recorded Hans's cell, actions, and whereabouts.

91.  During the material events in this case, Hans was under the dominion, custody, and control of Weber County Jail and Medical Staff, who, acting under the color of law, were deliberately indifferent to Hans's serious medical needs.

92.  Weber County Jail and Medical Staff exhibited deliberate indifference to Hans's serious medical needs by willfully and wantonly failing to monitor Hans in order to help him with a serious, life-threatening medical condition.

93.     Weber County Jail and Medical Staff also exhibited deliberate indifference to Hans's serious medical needs by ignoring the severe and obvious deterioration of his health while in jail. This indifference includes the willful or reckless disregard by Rochell, Nurse Wilson and Nurse Neiderhouser who ignored Mr. Hopkin's frequent call for medical assistance.

94.     Weber County Jail and Medical Staff knew or should have known that Hans was suffering from a sufficiently serious medical condition (severe alcohol withdrawal), and that he needed to be brought to the hospital for appropriate management. Weber County Jail and Medical Staff knew of the excessive risk this medical condition posed to Hans's health and safety, yet they disregarded this risk.

95.     Weber County Jail and Medical Staff worked at the jail during Hans's time there, and they had multiple opportunities to observe Hans's deteriorating medical condition, yet they ignored it.

96.     At all times material herein, Hans was suffering from the influence of severe alcohol toxicity, as well as from withdrawal symptoms, and he was incapable of medically managing his own condition.

97.     At all times material herein, Hans was entirely dependent upon his jailers to manage his condition.

98.     Weber County Jail and Medical Staff took upon themselves the responsibility to make life or death medical decisions for Hans, willfully disregarding Hans's need to be at a hospital for management of his serious medical condition, and/or to receive proper treatment outside of a hospital setting.

99.     Despite having access to medical providers better qualified to make appropriate medical decisions to manage Hans's condition, Weber County Jail and Medical Staff exercised a

willful and deliberate indifference to Hans's serious medical needs by failing to contact such providers and/or failing to administer the medical care that his sensitive situation required.

100.    In addition to the wrongful conduct noted above, Weber County Jail and Medical Staff failed to adhere to established jail policies and procedures by failing to perform timely living area checks by making timely rounds and physically inspecting Hans's person.

101.    In doing the acts alleged in this Compliant, Weber County Jail and Medical Staff were acting under the color of law and under the authority of their respective offices as deputy sheriffs, other officers, and medical personnel of the Weber County Jail.

102.    The conduct of the Weber County Jail and Medical Staff as alleged herein was flagrant, wrongful, and illegal, and was committed in willful violation of Hans's constitutional civil rights.

103.    The conduct of the Weber County Jail and Medical Staff as alleged herein cannot be immunized under state law because the conduct violated a clearly established right of which a reasonable person would have known.

104.    As a result of having his civil rights violated, Hans was made to suffer cruel and unusual punishment at the hand of the named defendants, ultimately resulting in the loss of his life, all to his great detriment and harm, and to the great detriment and harm of his parents and family.

105.    Weber County Jail and Medical Staff were personally and directly involved in violating Hans's rights.

///

///

///

## Prayer for Relief

Plaintiffs pray for judgment against Defendants as follows:

1.  For all damages that Plaintiffs are entitled to and that are reasonable in the circumstances;

2.  For economic damages in such amount as will be proven at trial;

3.  For non-economic damages in such amount as will be proven at trial;

4.  For non-economic damages specifically for the pain and suffering that Hans experienced from the time of Defendants' wrongdoing to the time of his death;

5.  For reasonable attorneys' fees and experts' fees pursuant to 42 U.S.C. § 1988;

6.  For pre- and post-judgment interest;

7.  For punitive damages against individual Defendants, because individuals' actions are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of others; and

8.  For court costs.

## Jury Demand

Plaintiff demands a trial by jury for all issues so triable.


DATED this 6th day of May 2026.

BURBIDGE | MITCHELL


By: /s/ Richard D. Burbidge
Richard D. Burbidge
*Attorneys for Plaintiffs*

15