R. Blake Hamilton (11395)
Janise K. Macanas (8065)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone: (801) 415-3000
blake.hamilton@dentons.com
Janise.macanas@dentons.com
*Attorneys for Weber County Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FINN FASTRE and JASON FASTRE, individually and as personal representatives of THE ESTATE OF HANS FASTRE, <br><br> Plaintiffs, <br><br> v. <br><br> WEBER COUNTY, et al., <br><br> Defendants. | **WEBER COUNTY DEFENDANTS' MOTION TO DISMISS** <br><br> Case No.: 1:26-cv-00060-TS-CMR <br><br> Judge Ted Stewart <br><br> Chief Magistrate Judge Cecilia M. Romero |

**I. RELIEF SOUGHT AND GROUNDS**

Defendants Weber County, Ashton Olsen, Braydon Apple, Danielle Rochell, Ashlyn McGlone, Madyson Foreman, Charles Sichz, Bodee Bowcut, Cody Williamson, Cayden Charley, Avery Wells, Beau Brown, Mathew LeCavalier, and Michael Clegg (collectively "Weber County Defendants") move this Court for an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

The Complaint fails for several independent reasons. First, the *Monell* claims against Weber County recite legal elements in conclusory fashion without identifying any specific policy, custom, or final policymaker. Second, the failure-to-train claim rests on a single incident and offers only "on information and belief" allegation of prior problems. Third, the individual-capacity claims group thirteen defendants together without alleging what each person actually did. Fourth, each individual defendant is entitled to qualified immunity because Plaintiffs have failed to identify clearly established law prohibiting their conduct under the alleged circumstances. Fifth, the official-capacity claims duplicate the entity claims against Weber County. Sixth, punitive damages against Weber County are barred.

## II. STATEMENT OF FACTS

For purposes of this motion only, the Weber County Defendants accept the following facts as alleged in the Complaint. See Compl., ECF 1.

Hans Fastre died on August 29, 2025, at the age of 57, while in custody at the Weber County Jail. Compl. ¶ 1. Plaintiffs Finn and Jason Fastre are his children and personal representatives of his estate. *Id.* ¶¶ 2-3.

On August 28, 2025, Deputy Ashton Olsen initiated a traffic stop on a vehicle driven by Hans. *Id.* ¶ 13. Deputy Olsen observed that Hans was unsteady, had glossy and watery eyes, slow speech, and could not provide his address. *Id.* ¶¶ 14, 16. A breathalyzer recorded Hans's blood alcohol content at .325. *Id.* ¶ 17. Deputy Braydon Apple assisted with the stop and observed Hans shaking and sweating profusely. *Id.* ¶ 18.

Officers transported Hans to the Weber County Jail for booking. *Id.* ¶ 22. At booking, Jail medical staff noted his high blood alcohol level, prescribed chlordiazepoxide (Librium) to assist

with alcohol withdrawal prevention, and placed him in Medical Cell 6 due to his condition. *Id*. ¶¶ 23, 25-26. Staff recorded Hans as calm, cooperative, and intoxicated. *Id*. ¶ 27.

On August 29, 2025, at approximately 12:00 p.m., Hans was talking and acting normally. *Id*. ¶ 31. He fell asleep around 5:45 p.m. *Id*. ¶ 32. Around 7:45 p.m., his cellmate Alonzo Hopkin heard Hans take a deep breath and saw him clench his fists and begin shaking. *Id*. ¶ 33. Hopkin attempted to use the cell intercom to alert staff. *Id*. ¶¶ 34-39.

At 7:56 p.m., Corrections Assistant Danielle Rochell approached Medical Cell 6 and noticed Hans's face was bluish-purple, his hands and feet were pale, and he showed no signs of breathing. *Id*. ¶ 42. Rochell called out for medical aid and sought assistance. *Id*. At 7:57 p.m., nurses and Deputy Charles Sichz arrived at the cell. *Id*. ¶ 44. At 7:58 p.m., additional Corrections Officers including Deputies Bodee Bowcut, Cody Williamson, Mathew LeCavalier, Beau Brown, and Michael Clegg arrived. *Id*. ¶ 46. Staff performed lifesaving efforts including CPR, sternum rub, Narcan, and use of an AED. *Id*. ¶ 47. Ogden City Fire Personnel arrived at 8:08 p.m. *Id*. ¶ 48. Hans was transported to McKay-Dee Hospital, where he was declared deceased at 8:45 p.m. due to cardiac arrest and shock. *Id*. ¶ 51.

### III. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint must include enough factual

matter to move the claims "from the realm of speculation" to plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept well-pleaded factual allegations as true but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 555.

## IV. ARGUMENT

### A. WEBER COUNTY IS IMMUNE FROM *MONELL* LIABILITY

A municipality is liable under § 1983 only when execution of the municipality's own policy or custom inflicts a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The fact that a municipality employs a person who allegedly violated a plaintiff's rights, standing alone, is insufficient to impose liability on the municipality. *Id*. at 691. The plaintiff must go further and allege an official policy or custom, a direct causal link between that policy and the injury, and deliberate indifference to an almost certain constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013).

The Tenth Circuit recognizes several forms a qualifying policy or custom might take, including a formal regulation, an informal but widespread and well-settled practice, a decision by an employee with final policymaking authority, ratification by such a policymaker, or a failure to train or supervise that amounts to deliberate indifference. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010). But whatever form the plaintiff relies on, each element must be adequately pled. *Est. of Burgaz v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022). The Supreme Court has emphasized that courts must apply "rigorous standards of culpability and

causation" to ensure that a municipality is held responsible only for injuries it actually caused. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

Measured against these standards, the First Cause of Action falls short. The Complaint alleges that Weber County maintained "an official policy and an informal custom amounting to a widespread practice" that caused Hans's death. Compl. ¶ 53. But it offers generalities where the law demands specifics. The Complaint fails to identify the particular policy at issue, the specific custom Plaintiffs rely on, or the policymaker responsible for either one.

What the Complaint does offer is a list of general categories of alleged wrongdoing, including "improperly booking inmates who should have received medical care," "failure to care for and monitor inmates," and "failure to timely administer medications." Compl. ¶ 54. These descriptions do not identify an actual policy that Weber County adopted or a custom that Weber County tolerated. They are, in the Supreme Court's words, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Plaintiffs also allege, "[o]n information and belief, similarly situated inmates were mistreated in a manner similar to the way Hans was mistreated." Compl. ¶ 58. But Plaintiffs offer nothing to support it. They fail to identify a prior incident by name, date, or circumstance that would suggest a pattern of constitutional violations at the Weber County Jail. The accompanying assertion that these policies were "continuing, widespread, and systematic" (*id.* ¶ 57) recites the legal standard rather than alleging facts that satisfy it.

Because the Complaint identifies only general categories of alleged wrongdoing, fails to connect those categories to any specific policy or policymaker decision, and relies on

information-and-belief allegations to establish a pattern, the First Cause of Action does not state a claim for *Monell* liability. The Court should dismiss it.

## B. THE FAILURE-TO-TRAIN CLAIM FAILS BECAUSE IT RELIES ON A SINGLE INCIDENT

Failure-to-train liability is a "narrow" form of *Monell* liability. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). It requires proof that the municipality's training program was inadequate, that the inadequacy resulted from deliberate indifference, and that the inadequacy actually caused the plaintiff's injury. *Id*. This "stringent standard of fault" typically requires a "pattern of similar constitutional violations by untrained employees." *Id.* at 62. A single incident is insufficient unless the need for different training was "so obvious" that the failure amounted to deliberate indifference. *Id.* at 63.

Plaintiffs allege that "[p]olicy-making officials of Weber County were deliberately indifferent to the need to properly train and supervise employees" (Compl. ¶ 64) and that "[p]ast violations of this right constituted a pattern of tortious conduct" (*id*. ¶ 67). The only factual support for these allegations is a statement made "[o]n information and belief" that "previous inmates at Weber County Jail have died and suffered severe injuries." Compl. ¶ 70. The Complaint does not identify what training was deficient, what prior incidents constitute the alleged pattern, who the responsible policymaker was, or how any training failure caused Hans's death. These are the kind of conclusory allegations that *Iqbal* holds insufficient to survive a motion to dismiss. 556 U.S. at 678. See also *Neal v. Okla. Cnty. Crim. Just. Auth*., No. CIV-24-575-JD, 2025 WL 1104777, at *8 (W.D. Okla. Mar. 5, 2025) (dismissing failure-to-train claim where plaintiff failed to plead that an individual officer had subjective knowledge of the risk of

6

harm, even though plaintiff identified DOJ reports, consultant findings, and prior incidents of violence). The Second Cause of Action should be dismissed.

## C. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity shields government officials from civil liability unless the plaintiff can show two things: that the official violated a constitutional right, and that the right was clearly established at the time of the conduct. *Hunt v. Montano*, 39 F.4th 1270, 1278 (10th Cir. 2022). The clearly-established inquiry demands that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy this burden, the plaintiff must identify on-point Supreme Court or Tenth Circuit authority, or demonstrate a clearly established weight of authority from other courts. *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018).

The subjective component of deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). But even where an official possesses such knowledge, he "may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

Separate from the clearly established inquiry, § 1983 requires that each defendant be personally involved in the alleged violation. A plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Vicarious liability is unavailable. *Id.* The complaint must "make clear

7

exactly who is alleged to have done what to whom," as distinguished from collective allegations against an undifferentiated group. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

**1. Deputies Olsen and Apple Delivered Hans to a Staffed Medical Facility Where He Received Immediate Care**

Plaintiffs allege that Deputies Olsen and Apple were deliberately indifferent for transporting Hans to the Jail rather than a hospital. Compl. ¶¶ 77-80. But the Complaint's own allegations demonstrate that, upon arrival at the Jail, medical staff immediately assessed Hans, prescribed Librium for alcohol withdrawal, and placed him in a medical observation cell. *Id.* ¶¶ 25-27. Hans was recorded as calm and cooperative. *Id*. ¶ 27.

Plaintiffs have yet to identify a single case holding that arresting officers must override standard booking procedures and independently determine that a BAC of .325 requires hospital transport when qualified medical staff at the receiving facility are available to provide immediate evaluation and treatment. That is exactly what happened here. Reasonable officers could disagree on whether booking an intoxicated individual at a facility with on-site medical care, rather than transporting him to a hospital, was constitutionally required under these circumstances.

The Tenth Circuit confronted analogous facts in *Estate of Burgaz v. Board of County Commissioners*, 30 F.4th 1181 (10th Cir. 2022), where it dismissed deliberate indifference claims against jail deputies who lacked actual knowledge of an immediate risk to a detainee. *Id*. at 1186-89. That court also held that a *Monell* failure-to-train claim requires an underlying individual constitutional violation. *Id.* at 1189-90. Here, Plaintiffs point to no authority establishing that an officer who delivers a detainee to a staffed medical facility, where the

detainee receives evaluation and prescription medication, violates a clearly established right. The Third Cause of Action should be dismissed.

**2. The Responding Officers Performed CPR, Administered Narcan, and Used an AED to Save Hans's Life**

The Fourth Cause of Action names eleven individual Weber County Defendants (Rochell, McGlone, Foreman, Sichz, Bowcut, Williamson, Charley, Wells, Brown, LeCavalier, and Clegg) and alleges collective wrongdoing by the group "Weber County Jail and Medical Staff" without differentiating what any individual personally did or failed to do. See Compl. ¶¶ 85-105.

This group pleading approach contravenes *Iqbal's* requirement that each defendant's individual actions be identified, 556 U.S. at 676, and *Pahls*' directive to "make clear exactly who is alleged to have done what to whom, as distinguished from collective allegations." 718 F.3d at 1225. Where a complaint fails to make this particularized showing, the individual defendants are entitled to qualified immunity. See *A.M. v. Holmes*, 830 F.3d 1123, 1163 (10th Cir. 2016). The Complaint's factual allegations defeat the deliberate-indifference theory as to the responding defendants.

Danielle Rochell is the person who discovered Hans's condition and immediately called for medical aid at 7:56 p.m. Compl. ¶ 42. Discovering an emergency and summoning help is the opposite of deliberate indifference.

Bodee Bowcut, Cody Williamson, Beau Brown, Mathew LeCavalier, and Michael Clegg arrived at the cell at 7:58 p.m., after the emergency was discovered, and participated in lifesaving

efforts including CPR, Narcan, and AED. Compl. ¶¶ 46-47. Actively attempting to save an inmate's life demonstrates the opposite of deliberate indifference.

Charles Sichz arrived at the cell at 7:57 p.m. and began a sternum rub that initiated the lifesaving interventions. Compl. ¶¶ 44-45. His prompt response demonstrates engagement with Hans's medical emergency, the opposite of the indifference Plaintiffs allege.

These facts are dispositive. Even assuming each responding defendant knew Hans faced a medical emergency, they "responded reasonably to the risk" by performing CPR, administering Narcan, applying an AED, and summoning emergency medical services. *Farmer*, 511 U.S. at 844. Officials who respond reasonably to a known risk are not liable "even if the harm ultimately was not averted." *Id.* The court in *Kincaid v. GEO Group, Inc.*, No. 2:23-cv-00644, 2024 WL 4241549, at *3-5 (D.N.M. Sept. 19, 2024), applied this principle at the 12(b)(6) stage, dismissing deliberate-indifference claims against individual detention officers where the plaintiff failed to allege subjective knowledge of an imminent risk and lumped officers together without alleging what each person did. *Id*. at *7. The same deficiencies are present here.

### D. WEBER COUNTY IS ALREADY A NAMED DEFENDANT AND THE CLAIMS ARE REDUNDANT

The Complaint sues each individual Weber County Defendant in both personal and official capacities. Compl. ¶¶ 5-6. An official-capacity suit against a government employee is treated as a suit against the employing entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. The Supreme Court has recognized that "[t]here is no longer a need to bring official-

10

capacity actions against local government officials, for under *Monell*, local government units can be sued directly." *Id*. at 167 n.14. Because Weber County is already a named defendant, the official-capacity claims against its employees serve no independent purpose and should be dismissed.

**E. THE WEBER COUNTY JAIL IS NOT A SEPARATE LEGAL ENTITY WITH THE CAPACITY TO BE SUED**

The Fourth Cause of Action is styled as a claim against "Weber County Jail and Medical Staff." Compl. at 12. Although the Weber County Jail is not formally named as a defendant in the caption, the Complaint's repeated references to "Weber County Jail and Medical Staff" as a collective group, and its allegations about the Jail's institutional conduct, suggest Plaintiffs may be asserting a claim against the Jail itself.

If that is Plaintiffs' intent, the claim fails as a threshold matter. Utah law provides that a county may sue or be sued, Utah Code Ann. § 17-50-302(2)(a), but there is no statutory or case authority supporting a direct action against a county's subdivisions, including its jails. *White v. Utah,* 5 F. App'x 852, 853 (10th Cir. 2001). The Tenth Circuit has consistently held that county jails and sheriff's offices are not separate suable entities. *Id*. ("there is no statutory or case authority supporting a direct action against a county's subdivisions, including its jails"); see also *Lindsey v. Thomson*, 275 F. App'x 744, 747 (10th Cir. 2007) (sheriff's departments are not legally suable entities); *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (same for police departments).

The proper defendant for claims arising out of jail operations is Weber County itself, which is already a named defendant. To the extent Plaintiffs intended to assert a claim against the Weber County Jail as a separate entity, that claim should be dismissed.

## F. WEBER COUNTY IS IMMUNE FROM PUNITIVE DAMAGES UNDER SECTION 1983

The Supreme Court has held that municipalities are immune from punitive damages in § 1983 actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Punitive damages exist to punish individual wrongdoers and deter future misconduct. *Id.* at 267. Imposing them on a municipality "punishes only the taxpayers, who took no part in the commission of the tort." *Id*. Plaintiffs' prayer for relief seeks punitive damages "against individual Defendants." Compl. at 15. But an official-capacity suit is a suit against the entity. *Kentucky v. Graham*, 473 U.S. at 166. Because Weber County is the real party in interest on the official-capacity claims, and because municipalities cannot be subjected to punitive damages, that portion of Plaintiffs' prayer for relief must be dismissed.

## V. CONCLUSION

The Complaint fails to state a claim against any Weber County Defendant. The *Monell* claims against Weber County rest on conclusory allegations of policy and custom, unsupported by any identified prior incident, any named policymaker, or any specific training deficiency. The individual-capacity claims group thirteen defendants together and fail to allege what each person did or did not do. The Complaint's factual allegations show that the individual defendants either delivered Hans to a staffed medical facility where he received immediate care, or responded to a

medical emergency and performed lifesaving measures. These facts defeat any inference of deliberate indifference.

The Weber County Defendants respectfully request that this Court enter an order dismissing with prejudice all claims against Weber County Defendants and granting such other and further relief as the Court deems just and proper.

DATED: July 17, 2026.

**DENTONS DURHAM JONES PINEGAR P.C.**

/s/ R. Blake Hamilton
R. BLAKE HAMILTON
JANISE K. MACANAS
*Attorneys for Weber County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties of record.

/s/ *Dawn Veree Marshall*
Dentons Durham Jones Pinegar P.C.